UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW BERGERON,<br><br>             Plaintiff,<br><br>        v.<br><br>BERRY PETROLEUM COMPANY, LLC, *et al.*,<br><br>             Defendants. | Case No. 1:24-cv-00503-CDB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS<br><br>(Doc. 6)<br><br><u>30- and 90-Day Deadlines</u> |

Plaintiff Matthew Bergeron initiated this action with the filing of a complaint in state court on March 11, 2024, against Defendants Berry Petroleum Company, LLC ("Berry Company"), and CJ Berry Well Services Management, LLC ("CJ Berry"). (Doc. 1-1). Plaintiff asserts that Defendants discriminated against him on the basis of his age and wrongfully terminated him, as well as intentionally caused him emotional distress. *Id.* at 6-7. Defendants removed the action to this Court on April 26, 2024. (Doc. 1).

Pending before the Court is Defendants' motion to compel individual arbitration and stay these proceedings. (Doc. 6). Defendants seek to compel arbitration on the grounds that Plaintiff is party to an enforceable agreement to arbitrate all employment-related claims, disputes, and controversies, as well as all issues of arbitrability. *See* (Doc. 6). Plaintiff opposes the motion and asserts that the arbitration agreement is permeated with unconscionability and is therefore

1

unenforceable. *See* (Doc. 8).[1]

## I. BRIEF FACTUAL BACKGROUND

In his complaint, Plaintiff asserts that he joined KVS Transportation in 2003, serving initially as a "driver responsible for watering oil rigs in the Kern River Department." In 2006, he was promoted to the role of supervisor, where he oversaw driver operations and ensured that rigs maintained adequate water levels for the safety of workers. KVS Transportation was acquired by Defendants around 2017 and Plaintiff was reassigned to his former position as a driver. (Doc. 1-1 at 3).

Plaintiff was not subject to any disciplinary actions until 2023. In that year, Reed Montgomery assumed the role of manager for Defendants' Kern River Department, and so began supervising Plaintiff's work. Plaintiff, who is 63, is considerably older than Mr. Montgomery. *Id.* Plaintiff alleges Mr. Montgomery made discriminatory remarks about his age to him. He states that, in one incident, he was told not to report to work the following day by a rig supervisor, since the rigs would be closed. He did not show up and the next day he was issued a written reprimand by Mr. Montgomery, who informed Plaintiff that Plaintiff reports to Mr. Montgomery, not the rig supervisor. *Id.*

In another incident, Plaintiff's vehicle became stuck in mud, a not uncommon occurrence. Instead of the customary assistance, he was issued a written reprimand, the first of his career regarding a stuck vehicle. *Id.* at 4.

In yet another incident, Plaintiff's heated lunch box, commonly kept in his truck during fall weather, was allegedly taken by a different employee, a night truck driver, who used the truck earlier. Plaintiff confronted him and was met with hostility. Plaintiff then waved his log sheet towards the other employee and then noticed his lunch box in the nearby storage room. The night driver denied any theft and accused Plaintiff of making false claims. Plaintiff then recovered his lunch box. The next day, he was summoned by Mr. Montgomery and a human

---

[1] On August 20, 2024, following the parties' expression of consent to the jurisdiction of a U.S. magistrate judge, this action was reassigned to the undersigned for all purposes, including resolution of Defendants' motion to compel arbitration. (Doc. 12).

2

1  resources department employee, who told him he was accused of striking the night driver with a
2  piece of paper. He was placed on a three-day leave pending an investigation; at the end of his
3  leave, he was terminated. He states he was the oldest and longest tenured of all employees prior
4  to his termination. *Id.* at 4-5.

## II. GOVERNING LAW

The Federal Arbitration Act applies to arbitration agreements in any contract affecting interstate commerce and "governs the allocation of authority between courts and arbitrators." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); 9 U.S.C. § 2. The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A party seeking to enforce an arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

To determine whether it should grant a motion to compel arbitration, the Court must consider two "gateway" questions: (1) "whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Because the FAA "is phrased in mandatory terms," "the standard for demonstrating arbitrability is not a high one, [and] a district court has little discretion to deny an arbitration motion." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

Since arbitration is a creation of contract, a court may compel arbitration only when there is a "clear agreement" to arbitrate between the parties. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092-93 (9th Cir. 2014) (citations omitted). "When determining whether a valid contract to arbitrate exists, [courts] apply ordinary state law principles that govern contract formation." *Id*.

1  at 1093 (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 78, 782 (9th Cir. 2002)).

2  The moving party bears the burden of demonstrating the existence of an arbitration agreement.

3  *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1110 (E.D. Cal. 2023) (citing *inter alia Reichert*

4  *v. Rapid Invs., Inc*., 56 F.4th 1220, 1227 (9th Cir. 2022).

5      "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

6  arbitration." *Moses*, 460 U.S. at 24-25. *See Epic Sys. Corp v. Lewis*, 138 S. Ct. 1612, 1621

7  (2018) (the FAA establishes "a liberal federal policy favoring arbitration agreements")

8  (quotation and citation omitted); *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581

9  (2008) (Congress enacted the FAA "to replace judicial indisposition to arbitration"). As a result,

10 arbitration should only be denied when "it may be said with positive assurance that the

11 arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*

12 *Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). It is well-established that

13 "arbitration provides a forum for resolving disputes more expeditiously and with greater

14 flexibility than litigation." *Lifescan, Inc., v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011

15 (9th Cir. 2004).

16     However, the presumption in favor of arbitration applies only when determining the

17 scope of arbitrable *issues* but not which *parties* agreed to arbitrate. *See Kramer v. Toyota Motor*

18 *Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013); *see also First Options of Chicago, Inc v. Kaplan*,

19 514 U.S. 938, 944-45 (1995) (holding the presumption for arbitration "reversing" when

20 determining whether certain parties are subject to arbitration in cases of "silence or ambiguity").

21 "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r]

22 and unmistakabl[e] evidence that they did so." *Kaplan*, 514 U.S. at 939 (internal quotation and

23 citation omitted).

24     Finally, in evaluating a motion to compel arbitration, the district court must apply the

25 summary judgment standard outlined in Federal Rule of Civil Procedure 56. *See Knapke v.*

26 *PeopleConnect, Inc*., 38 F.4th 824, 831 (9th Cir. 2022); *Hansen v. LMB Mortg. Servs., Inc*., 1

27 F.4th 667, 670 (9th Cir. 2021). "The summary judgment standard is appropriate because the

28 district court's order compelling arbitration is in effect a summary disposition of the issue of

whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen*, 1 F.4th at 670 (internal quotation marks and citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III.    DISCUSSION

#### a. Whether the FAA is Applicable to Any Arbitration Agreement Between the Parties

Section 1 of the FAA contains a transportation worker exemption that excludes from the ambit of the FAA employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118-19 (2001). A court must "assess whether a Section 1 exemption applies before ordering arbitration." *In re Van Dusen*, 654 F.3d 838, 846 (9th Cir. 2011); *see New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019) (holding that whether an arbitration agreement is part of an employment contract of a worker engaged in interstate commerce is a question to be answered by the court before it compels arbitration).

The Supreme Court recently provided guidance regarding the parameters of the Section 1 exemption. In *Southwest Airlines Co. v. Saxon*, the Supreme Court held that an airline ramp supervisor for Southwest Airlines whose "work frequently require[d] her to load and unload baggage, airmail, and commercial cargo on and off airplanes that travel across the country" fell within Section 1's exemption. 596 U.S. 450, 453 (2022). The Court both declined to adopt a broad rule that would exempt all workers of a business engaged in interstate commerce and declined to limit the exemption to only workers who physically traveled across state lines. *Id*. at 460-63. Instead, the Court determined "any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption." *Id*. at 457. The Court elaborated that, to satisfy Section 1's exemption of "transportation worker," the worker "must play a direct and 'necessary role in the free flow of goods' across borders." *Id.* at 458 (quoting *Circuit City Stores*, 532 U.S. at 115). Put differently, to fall under the exemption, a worker "must at least play a direct and necessary role in the free flow of goods across borders" and

1 "must be actively engaged in transportation of those goods across borders via the channels of
2 foreign or interstate commerce." *Id*. Additionally, workers who are "intimately involved with
3 the commerce (*e.g.*, transportation) of the cargo" also qualify. *Id.*
4     In sum, the "bottom line is that to qualify as a transportation worker, an employee's
5 relationship to the movement of goods must be sufficiently close enough to conclude that his
6 work plays a tangible and meaningful role in their progress through the channels of interstate
7 commerce." *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1160 (9th Cir. 2024), cert.
8 denied sub nom. *Randstad Inhouse Serv. v. Ortiz*, No. 23-1296, 2024 WL 4426655 (U.S. Oct. 7,
9 2024).
10     In its motion, Defendant contends the transportation worker exemption is inapplicable
11 and the FAA applies to the arbitration agreement at issue. (Doc. 6 at 14-18). Plaintiff does not
12 argue that the exemption is applicable nor that the FAA is inapplicable. *See generally* (Doc. 8).
13     In support of its position, Defendant cites to the facts in the complaint and to the
14 declaration of James Wright accompanying the motion. (Doc. 6-3). The complaint states that
15 Plaintiff was initially a "driver responsible for watering oil rigs." (Doc. 1-1 at 3, ¶ 7). He was
16 then promoted to the "role of supervisor," where he oversaw "driver operations" and ensured
17 "that rigs maintained adequate water levels for the safety of the workers." After acquisition of
18 his initial employer, KVS Transportation, by Defendants in 2017, he was reassigned to his
19 former position as a driver. *Id.*
20     In his declaration, James Wright provides that he is a logistics director employed by CJ
21 Berry Well Services Management, LLC ("CJ Berry"), since November 2021 and oversees field
22 operations, including vacuum truck operations. (Doc. 6-3 at 2, ¶ 2). He states that Plaintiff was
23 employed as a "vacuum truck driver assigned to the Kern River Lease," entirely within
24 California. He states that a vacuum truck, as used by Defendant CJ Berry, "uses a suction
25 process to load fluids and solids" created by the drilling process. *Id.* at ¶ 4. He declares that
26 Plaintiff would "primarily load water at loading sites within Kern County" and "transport and
27 deliver that water to drilling locations exclusively within Kern County." He states that the water
28 delivered was "then used in the drilling and well management process at the well locations

within California" and that Plaintiff "would not travel outside California during this transport." *Id.* at ¶ 5.

Mr. Wright goes on to say that Plaintiff would also occasionally load fluids or other debris from drilling locations in Kern County and transport it to third-party locations for safe disposal within California and would not travel outside of California during this transport. *Id.* at 3, ¶ 6. In his opposition, Plaintiff does not dispute the declaration of Mr. Wright nor its assertions.

These facts do not provide any basis to conclude that Plaintiff, in the course of his employment, played a direct and necessary role in the free flow of goods across borders and was actively engaged in transportation of those goods across borders via the channels of foreign or interstate commerce. Thus, Plaintiff does not have a direct role in any supply chain or movement of goods that extends across state lines, nor do any facts contained in the complaint or otherwise before the Court suggest any ancillary or accessory role. Put another way, Plaintiff's relationship to the movement of goods is not sufficiently close enough to conclude that his work plays a tangible and meaningful role in their progress through the channels of interstate commerce. *See Coats v. TTX Co.*, No. EDCV232405MWFSPX, 2024 WL 1118997, at *4 (C.D. Cal. Feb. 27, 2024) ("Plaintiff's duties, which include maintaining, repairing, and cleaning trains, are not directly involved in the actual transit of goods across state lines.").

It follows that the Section 1 exemption is inapplicable and, therefore, the FAA applies to any arbitration agreement between the parties.

**b. Whether under the Agreement's Delegation Clause an Arbitrator Must Decide Plaintiffs' Challenges to Enforceability and Arbitrability**

Although he does not directly challenge the existence of an operative arbitration agreement or the fact that he entered into the agreement, Plaintiff argues the agreement is unenforceable because it suffers from various forms of substantive and procedural unconscionability. (Doc. 8). Defendants argue that the question of whether the DRP is unconscionable is a "question of enforceability and thus an issue of arbitrability" that the parties delegated to an arbitrator. (Doc. 6 at 24; Doc. 9 at 5); *see* (Doc. 6-1 at 18, ¶ 3).

Generally, in deciding whether to compel arbitration, a court must determine whether an arbitration agreement exists and whether it covers the parties' dispute. *Brennan*, 796 F.3d at 1130. "Although gateway issues of arbitrability are typically reserved for the court, parties may agree to delegate them to the arbitrator." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010)). Courts should not assume parties agreed to arbitrate arbitrability unless there is "clear and unmistakable evidence that they did so." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) (citing *Kaplan*, 514 U.S. at 944). Language that delegates to the arbitrator the authority to decide "the validity or application of any of the provisions of the arbitration clause" constitutes clear and unmistakable evidence. *Momot*, 652 F.3d at 987 (citing *Rent-A-Center*, 561 U.S. at 68-69). An agreement to arbitrate a gateway issue, such as a delegation clause, "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70.

Like Plaintiff here, in *Rent-A-Center*, the plaintiff resisting arbitration argued that "the arbitration agreement as a whole [was] substantively unconscionable." The Court noted that the plaintiff "did [not] even mention the delegation provision" in his opposition brief. *Rent-A-Center*, 561 U.S. at 72-73. Because the plaintiff argued only that the arbitration agreement as a whole was unenforceable due to unconscionability but failed to specifically address the delegation provision at issue, the Court never reached plaintiff's arguments against the agreement as a whole. The Court explained: "It may be that had [the plaintiff] challenged the delegation provision by arguing that these common procedures as applied to the delegation provision rendered that provision unconscionable, the challenge should have been considered by the court." *Id.* at 74.

In a later decision interpreting the Supreme Court's holding, the Ninth Circuit explained that "if a party's challenge mentions and specifically relates to the validity of the delegation provision in its opposition to the motion to compel arbitration or other pleading, the federal court has a green light to consider those arguments." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1010

8

(9th Cir. 2023). Put another way, as long as a plaintiff mentions the delegation clause and applies arguments involving unconscionability to that clause, even if they are the same as the arguments in opposition to the agreement as a whole, a court may then consider the challenge to the delegation clause. It follows from *Bielski* that if a plaintiff resisting another party's attempt to arbitrate does not mention an operative delegation clause that reserves the question of arbitrability to an arbitrator, then a court may not construe the plaintiff's arguments against the enforceability of an arbitration agreement as a whole as also applying specifically to the unchallenged (and unacknowledged) delegation clause.

In addressing any challenges to the arbitration agreement as a whole, the Court must first address the applicability of any operative delegation clause. *Rent-A-Center*, 561 U.S. at 70. Here, the delegation clause is contained in the DRP and clearly delegates the issues of enforceability of the agreement and arbitrability of disputes to the arbitrator. The relevant paragraph of the agreement is reproduced below:

> Except as stated in Section 4 of this DRP, Covered Disputes include those arising out of or related to: (i) a Covered Individual's employment with or work for Company, applying for or being denied such employment or work, the termination of such employment or work, and/or any of the terms, conditions, or benefits of such employment or work (including any wage and hour issues); (ii) *issues of arbitrability such as the formation, interpretation, applicability or enforceability of this DRP, except to the extent they are Excluded Disputes*; (iii) the procedures to be followed in the arbitration proceedings; (iv) allegations of delay and waiver, including issues arising as to alleged waiver by litigation conduct; (v) whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met; and (vi) any disputes over the payment and/or apportionment of the arbitration forum costs (including arbitrator fees), including as to whether the arbitration forum costs provisions of this DRP are unconscionable.

(Doc. 6-1 at 18, ¶ 3) (emphasis added). *See Rizvanovic v. United Parcel Serv., Inc.*, No. 1:21-CV-01278-CDB, 2023 WL 346800, at *8 (E.D. Cal. Jan. 20, 2023) ("it is clear and unmistakable from the text of the agreement, that the arbitrator, not the court, shall resolve questions of arbitrability").

Nowhere in his opposition does Plaintiff challenge this provision. *See generally* (Doc. 8). Plaintiff only challenges that the agreement as a whole is unenforceable. Indeed, Plaintiff

1  does not mention this delegation clause or refer to it in any fashion.  As Plaintiff does not raise
2  any arguments to dispute the delegation clause's enforceability, the Court finds that the existence
3  of the delegation clause is sufficient evidence that the parties intended to arbitrate arbitrability
4  and delegate the scope of the arbitration agreement to the arbitrator.  *See Ratajesak v. New*
5  *Prime, Inc.*, No. SA CV 18-9396-DOC (AGRx), 2019 WL 1771659, at *6 (C.D. Cal. March 20,
6  2019) ("But under the contract, the parties clearly and unmistakably delegated this question to
7  the arbitrator.").  Plaintiff can and should raise his challenges before the arbitrator.

8  Without challenging the existence of the arbitration agreement, Plaintiff claims only that
9  the agreement is unenforceable due to unconscionability.  But Plaintiff fails to acknowledge the
10  agreement's delegation clause – let alone advance any arguments that the clause specifically is
11  unconscionable – or counter Defendants' arguments that the delegation clause requires an
12  arbitrator to pass on the express enforceability and arbitrability challenges raised by Plaintiff to
13  his being subject to mandatory arbitration.  Accordingly, the Court will not address Plaintiff's
14  arguments in opposition to the agreement as a whole, such as those relating to unconscionability,
15  as those are properly delegated to the arbitrator.  *See Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
16  97 F.4th 1190, 1201 (9th Cir. 2024) ("Thus, plaintiffs' remaining unconscionability challenges
17  to the Arbitration Agreement fall within the scope of the enforceable Delegation Provision, and
18  we leave them to the arbitrator in the first instance."); *Brennan*, 796 F.3d at 1132.

19  **c. Request to Stay the Action Pending Arbitration**

20  Defendants request that the Court stay the action pending conclusion of arbitration.
21  (Doc. 6 at 26-27).  In his opposition, Plaintiff does not address the request for a stay.  *See*
22  *generally* (Doc. 8).  "When a federal court finds that a dispute is subject to arbitration, and a
23  party has requested a stay of the court proceeding pending arbitration, the court does not have
24  discretion to dismiss the suit on the basis that all the claims are subject to arbitration.  *Smith v.*
25  *Spizzirri*, 601 U.S. 472, 475-76 (2024) (citing 9 U.S.C. § 3) (providing that, when any issue in a
26  suit is subject to arbitration, the court shall stay the action upon request by a party until
27  arbitration is completed); *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 711 (9th Cir.
28  2024) ("Since *Spizzirri* made clear that a district court does not have discretion to dismiss the

action when granting a motion to compel arbitration under 9 U.S.C. § 3, the court is compelled to grant [defendant's] alternative request for a stay.")

### IV. CONCLUSION AND ORDER

Accordingly, it is HEREBY ORDERED:

1. Defendants' motion to compel arbitration (Doc. 6) is GRANTED;

2. This action is STAYED pending the outcome of arbitration;

3. The parties are DIRECTED to submit a joint status report outlining their efforts regarding the scheduling of the arbitration **within 30 days** of the date of issuance of this order, and joint status reports concerning the arbitration proceedings **every 90 days thereafter** until the dispute between the parties has been settled or otherwise resolved; and

4. The parties are DIRECTED to file a notice of completion with the Court **within 30 days** of the completion of arbitration, informing the Court of the parties' intentions regarding the posture of this case.

IT IS SO ORDERED.

Dated: **January 21, 2025**

UNITED STATES MAGISTRATE JUDGE